J-A20044-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                  :         PENNSYLVANIA
                                  :

            v.                   :
                                  :
                                  :

BACHIR KANNAH                 :
                                  :

           Appellant       :    No. 2269 EDA 2024

Appeal from the Judgment of Sentence Entered June 10, 2024
In the Court of Common Pleas of Delaware County Criminal Division at
No(s):  CP-23-CR-0005234-2022

BEFORE:   MURRAY, J., McLAUGHLIN, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY FORD ELLIOTT, P.J.E.:       **FILED JANUARY 28, 2026**

Appellant, Bachir Kannah, appeals the judgment of sentence imposed by the Court of Common Pleas of Delaware County after a jury found him guilty of robbery.[1]  He challenges: (1) the sufficiency of the evidence; (2) the denial of his objection to the trial court's answer to a jury question; (3) the denial of his motion *in limine* requesting a jury instruction permitting an adverse inference from the Commonwealth's failure to preserve body camera footage of a police officer's telephone conversation with the victim; (4) the weight of the evidence; (5) the discretionary aspects of his sentence; and (6) the amount of restitution awarded.  Upon review, we affirm.

The trial court has summarized the facts in this case as follows:

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 3701(a)(1)(ii).

[A]t the time of the incident, the [victim, Mariah Matthews,] was a college student. She live[d] in Baltimore but was going to college in the Phoenixville, Chester County area. In October of 2022, she had a pair of sneakers that she was trying to sell. They were special Nike Trooper, Travis Scott reversed size 10.5 sneakers. The [v]ictim advertised the sneakers on the "OfferUp App[]" for $800. [Appellant] contacted the [v]ictim through the [a]pp[] and messaged her [that] he was willing to purchase the sneakers for the asking price. The [v]ictim and [Appellant] began texting each other through the [a]pp. [Appellant] eventually gave the [v]ictim his cell phone number and they started texting back and forth in regular text messages. The text messages through the [a]pp[] and from their personal cell phones were admitted into evidence and published to the jury.

On October 9, 2022, [Appellant] and the victim arranged a meeting in Sharon Hill, Delaware County[,] to complete the transaction. The location [Appellant] selected was a couple blocks from where he lives. During the meeting [Appellant] inspected the sneakers and then spent a fair amount of time on YouTube viewing videos that instructed what to look for to determine if the sneakers are authentic versus counterfeit. The [v]ictim had an extended look at [Appellant] while he was viewing [the] YouTube videos. The [v]ictim testified that eventually [Appellant] pulled out a gun, pointed it at her, then picked up the sneakers[,] and ran away. She also testified that the sneakers were authentic.

William Shute, a retired FBI agent, was qualified as an expert in cell phone forensics. He testified that [Appellant's] phone was in the area of the crime scene at the time the crime was committed. [Appellant] did not testify.

Trial Court Opinion, 11/6/24, 1-2 (section break added).

In addition, trial testimony established that the victim arrived in the area of the planned sale at "around 11:30, 12 o'clock." N.T. Trial, 4/17/24, 83. Following the robbery, the victim resumed texting Appellant. *See id.* at 47, 53-54, 102-04. In an exchange of messages, she angrily called him names and asserted that the sneakers "are fake." *Id.* at 53-54. During cross-

examination, the victim confirmed that the shoes were authentic and that she was lying in the text messages about the shoes being fake because she was angry at that time. *See id.* at 112; *see also id.* at 113-14 (additional re-direct testimony confirming that the victim was not actually conceding that the stolen sneakers were "fake shoes" and that the sneakers were actually "real").

Following the robbery, the victim began the drive home to Maryland. *See* N.T. Trial, 4/17/24, 35. On the way, she called 911 to report the robbery about an hour after it happened. *See id.* at 35, 57-58, 100. After the 911 call, she received a phone call from a police officer while she was still driving home. *See id.* at 59. She gave that officer an account of the robbery during their phone conversation. *See id.* at 105-06.

On October 11, 2022, the victim returned to Pennsylvania, gave a statement to the Sharon Hill Police Department, which the police made an audio record of, and identified Appellant in a photographic array. *See* N.T. Trial, 4/17/24, 35-36, 59, 107-10, 115-21, 192-93. She brought with her images from an Instagram account with a username that was the same as a Cash App account associated with the phone number that she used to send text messages to Appellant. *See id.* at 36-38, 59. She also identified Appellant in photographs on that Instagram account. *See id.* at 37, 193-94.

On October 12, 2022, the police executed a search warrant at the home of Appellant's stepfather in Sharon Hill, which was listed with the Pennsylvania Department of Transportation as an address for Appellant. *See* N.T. Trial,

4/17/24, 164, 173, 195. Right inside the door to the residence, the police recovered a firearm magazine and a diploma for Appellant from a suitcase that was near a pile of shoe boxes that included a Nike shoebox that corresponded with the stolen sneakers. *See id.* at 164, 169-71, 206-07, 209-10. The police did not recover a firearm. *See id.* at 183. The police subsequently arrested Appellant at a friend's house in Darby borough, early in the morning on November 10, 2022. *See id.* at 212-13.

On November 8, 2023, Appellant filed a motion to compel discovery which included a request for a police body camera recording of Sharon Hill Police Officer Ruben Pagan Rodriguez's October 9, 2022 phone conversation with the victim. *See* Motion to Compel Discovery, 11/8/23, ¶¶ 3-5. In an incident report attached to the motion, Officer Pagan Rodriguez noted that he conducted the phone call with the victim and included a summary of the account that the victim gave him during their conversation. *See* Incident Report, 10/9/22, 2-3 (attached as Exhibit A to Motion to Compel Discovery, 11/8/23). In the same incident report, Detective Vincent Procopio stated that he was contacted by Officer Pagan Rodriguez and that "Officer Rodriguez obtained [a subsequently described] statement [from the victim] with his department issued body camera recording." *Id.* at 4.

The trial court presided over a hearing on the discovery motion on December 19, 2023. Detective Procopio, the person responsible for maintaining his police department's body cameras, testified that there was no body camera footage preserved from Officer Pagan Rodriguez on or about the

- 4 -

time of the officer's phone conversation with the victim. ***See*** N.T. Discovery Hearing, 12/19/23, 19-21. He asserted that he was unable to confirm whether Officer Pagan Rodriguez's body camera was turned on at the time of the phone conversation because the police "only ha[d] 30 days to go back and view [an] officer's body camera footage." ***Id.*** at 21-22. Detective Procopio explained on cross-examination that, even if an audio recording had been made of the phone conversation, he would not have believed it necessary to preserve the recording because the victim came to the police station three days after the phone conversation and gave an audio recorded in-person statement. ***See id.*** at 23. Officer Pagan Rodriguez testified that he did not believe his body camera was activated at the time of his phone conversation with the victim. ***See id.*** at 27. The court held its ruling on the motion under advisement. ***See*** Trial Court Docket Entry, 12/19/23.

In an omnibus pre-trial motion filed on April 1, 2024, Appellant requested, *inter alia*, a jury instruction for "the failure to produce [a] document or other tangible evidence at trial," as provided in Suggested Standard Criminal Jury Instruction Section 3.21B, with respect to the absence of a body camera recording of Officer Pagan Rodriguez's October 9, 2022 phone conversation with the victim.[2] Omnibus Pre-trial Motion, 4/1/24, ¶¶ 26-35.

_____

[2] Detective Procopio confirmed in his trial testimony that no body camera footage was preserved with respect to the Officer Pagan Rodriguez's call with
*(Footnote Continued Next Page)*

Appellant proceeded to a jury trial on the above-referenced robbery charge and additional charges for carrying a firearm without a license and possessing an instrument of crime,[3] and the Commonwealth requested a bifurcated non-jury trial on a separate charge for possession of a firearm by a prohibited person.[4] *See* N.T. Pre-Trial Conference, 4/15/24, 6-7, 9-11. The Commonwealth presented testimony from the victim, Agent Shute, Detective Procopio, and Detective Sean Johnson, who executed the search warrant at Appellant's stepfather's home. Appellant presented testimony from Officer Pagan Rodriguez. The parties stipulated at trial that one of the Instagram photographs that the victim showed to the police was a photograph of

_____

the victim. *See* N.T. Trial, 4/17/24, 189 ("There was nothing actually preserved from Officer Rodriguez."); *id.* at 191 (Detective Procopio when asked whether he was aware of whether Officer Pagan Rodriguez turned his body camera on for the call with the victim: "Yeah, I cannot recall. I can't sit here today, two years ago because it wasn't preserved then say what the phone conversation consisted of. But was it activated? Yes."); *id.* ("It was not preserved. It was not saved. It is -- does not exist for this investigation."). He also confirmed that a reference in an affidavit of probable cause concerning Officer Pagan Rodriguez taking a "body cam statement" from the victim was not accurate. *See id.* at 247 ("There was no in person [interview] with the victim [with] a body camera statement taken."); *see also id.* at 253 (Detective Procopio confirming that body camera footage of an in-person victim statement would get preserved). He agreed that there was a body camera recording at the time of the October 9, 2022 phone call with the victim but that it was not preserved. *See id.* at 255 ("Q. But today you're testifying that no, he did turn it on. You just didn't preserve it, right? A. Correct. There was nothing preserved.").

[3] 18 Pa.C.S. §§ 6106 and 907, respectively.

[4] 18 Pa.C.S. § 6105.

Appellant and came from his Instagram account. **See** N.T. Trial, 4/17/24, 70-71. The parties also stipulated at trial that Appellant had used, since 2020, the cellular telephone number that the victim used to text him. **See id.** at 198.

At trial, the Commonwealth played recordings of three telephone conversations which Appellant made during his pre-trial detainment. **See** N.T. Trial, 4/17/24, 217-18. Appellant's counsel paraphrased the contents of the recorded calls, during cross-examination, as follows: (1) "You hear my client go and some girl was trying to sell me fake shoes. So I took the shoes to see if they were original;" (2) "The second phone conversation is the one where there's something [to] the effect said like they, you know, they locked me up with no gun. I didn't have any gun on, right? … there's also something in there about like, you know, I left it at the house;" and (3) "there's a prison phone call with my client and a girl … She's basically asking like what's going on and we hear a snippet of that phone [call,] and he basically says like the only good thing is, you know, I don't have a gun on me. I'm trying to get it to regular robbery, not armed robbery or something like that[.]" **Id.** at 234-37.

Prior to the closing arguments of the parties and the trial court's instructions to the jury, the trial court revisited Appellant's earlier request for an instruction concerning the "failure to produce [a] document or other tangible evidence at trial." **See** N.T. Trial, 4/18/24, 5. The court rejected the request as follows: "My decision is that this is not appropriate here. There

was a satisfactory explanation for the body cam, where the body cam went. It was satisfactorily explained[,] and I will not be reading that. You can argue as you argue, but I will not be reading that." *Id.* Appellant's counsel argued that the explanation was not satisfactory because the failure to preserve the body camera footage "contravene[d] the[ police department's] body camera policy." *Id.* at 6. The court rejected that argument: "It has been explained over and over and over, and we know what happened. He body cammed a phone call with the victim. It was given over, it wasn't preserved. It is gone, we don't have it. It has been explained. There is no instruction on it." *Id.* at 7.

During the jury's deliberation, it asked the trial court a question: "Can a victim feel threatened or have a fear of bodily harm or injury without a weapon?" N.T. Trial, 4/18/24, 99. The court decided to answer, "Yes," to the question and advise the jury that they were "free to go back and reread" an instruction that they had with them. *Id.* Appellant's counsel noted an objection:

> You have my objection for the record. I think it's improper to answer the question formally one way or the other. I would just ask them to reread the instructions to the elements of robbery as charged by the Commonwealth. So, I would be objecting … I just ask that they be instructed to reread the instruction.

*Id.* at 99-100. The court implicitly denied the objection by answering the jury's question as it originally stated it would. *See id.* at 100 ("I did receive your question. … The answer is [`]yes[']. You are free to go back and reread the instruction which you have with you.").

The jury found Appellant guilty of robbery and not guilty of carrying a firearm without a license or of possessing an instrument of crime. *See* Jury Verdict, 4/18/24, 1-2; N.T. Trial, 4/18/24, 101-03. The court then found Appellant not guilty of possession of a firearm by a prohibited person. *See* Bench Verdict, 4/18/24, 1; N.T. Trial, 4/18/24, 105. Sentencing was deferred for a later date with the possibility for global sentencing along with an additional pending criminal matter for Appellant. *See* N.T. Trial, 4/18/24, 106. The court ordered a pre-sentence investigation (PSI) report for the deferred hearing. *Id.* at 107.

On June 10, 2024, the trial court sentenced Appellant to seven to eighteen years' imprisonment with credit for time served between November 10, 2022, and June 10, 2024, an order to stay away from the victim, and an order of restitution of $800.00 to the victim.[5] *See* Order (sentencing),

_____

[5] The minimum imprisonment term was at the top of the standard range recommended by the Sentencing Guidelines: 72 to 84 months' imprisonment, plus or minus twelve months for aggravating or mitigating circumstances. *See* 204 Pa. Code § 303.15 (offense listing, applying an offense gravity score of ten for robbery involving the threatening of serious bodily injury in violation of 18 Pa.C.S. § 3701(a)(1)(ii)) (7th ed., amend. 6); 204 Pa. Code § 303.16(a) (basic sentencing matrix, recommending a standard range minimum imprisonment term of 72 to 84 months' imprisonment, plus or minus twelve months for an offense with a gravity score of ten where the defendant has a prior record score of "RFEL") (7th ed., amend. 6); N.T. Sentencing Hearing, 6/10/24, 4 (noting the applicable guideline range and that Appellant had a prior record score of "RFEL" based on prior adjudications for rape and burglary); *id.* at 8-9 (the parties agreed to the application of the Guidelines' basic sentencing matrix over the application of a deadly weapon enhancement matrix).

6/10/24, 1; N.T. Sentencing Hearing, 6/10/24, 13-14. We note that the Commonwealth requested the ordered amount of restitution because it "was the agreed-upon price for the shoes" which Appellant took from the victim. N.T. Sentencing Hearing, 6/10/24, 4.

With respect to Appellant's instant challenge to the discretionary aspects of his sentence, we reproduce the following remarks that the Commonwealth made at sentencing concerning an arrest of Appellant in a separate Philadelphia matter that did not result in a conviction:

> [THE PROSECUTOR]: … And in this case, as I pointed out, I looked at the Philadelphia docket. He was incarcerated and in the phone calls that were played at the jury trial, they had to be stopped because [it] would've [] forced a mistrial if I kept going because of the one he talks about how he had just gotten home for a robbery in Philadelphia. At a preliminary hearing in the address, excuse me, the dates are outlined in the memorandum. That case had to be withdrawn. I don't know what the circumstances were. I'm not asking that the [c]ourt hold any alleged facts against him, but what do we have? He couldn't go a couple of months without being in jail for being accused of robbery until he's picked up for actually committing another robbery that he's convicted of. He doesn't learn his lesson whether he is completely innocent and mistaken identity, whatever for the first one, he couldn't go a couple months without committing another robbery for a pair of shoes. The record for this case, [Appellant's] history, are full of aggravating factors and merits an[] aggravated sentence because he's just going to keep committing serious crimes and nothing and no one is going to stop him.

N.T. Sentencing Hearing, 6/10/24, 6-7.[6]

_____

[6] The Commonwealth had requested a longer imprisonment term, within the aggravated range recommended by the Guidelines: eight to sixteen years' imprisonment. **See** N.T. Sentencing Hearing, 6/10/24, 9. Appellant's counsel

*(Footnote Continued Next Page)*

In a timely-filed post-sentence motion, Appellant challenged: (1) the discretionary aspects of his sentence; (2) the weight of the evidence; and (3) the amount of the restitution awarded. *See* Post-Sentence Motion, 6/20/24, ¶¶ 4-6. With respect to the sentencing claim, he alleged that the maximum imprisonment term was "not supported by aggravating factors" and the Commonwealth's reference to his Philadelphia robbery charge, which did not result in a conviction, was improper. *See id.* at ¶ 4. As for the weight claim, he noted that the evidence "was so inherently unreliable and contradictory that a new trial [wa]s warranted in the interest of justice," the victim "gave multiple inconsistent statements to police," he was found not guilty of the weapons charges, and "there was no testimony that [he] threatened the [victim] in any way." *Id.* at ¶ 5. In support of the restitution claim, he asserted that "there was a genuine dispute as to the authenticity and value of the shoes," based on a related statement from the victim that the shoes were "fake," there were "no receipts or documentation presented at trial establishing the actual value of the sneakers," and that the evidence did not support the amount of restitution awarded. *Id.* at ¶ 6. On July 31, 2024, the trial court denied the post-sentence motion after a hearing at which the court reconsidered Appellant's challenge to the discretionary aspects of his

---

requested a term "somewhere in the standard range," and suggested an imprisonment term of six and one-half to thirteen years. *Id.* at 12.

maximum imprisonment term. *See* Order (post-sentence motion denial), 7/31/24, 1.

Appellant timely appealed. *See* Notice of Appeal, 8/27/24, 1. For purposes of our review, Appellant and the trial court have both satisfied their obligations under Pennsylvania Rule of Appellate Procedure 1925. *See* Order (Rule 1925(b)), 8/27/24, 1; Petition for Extension to File a Rule 1925(b) Statement, 9/17/24, 1-3; Order (granting extension of time for Rule 1925(b) statement), 9/17/24, 1; Rule 1925(b) Statement, 10/7/24, 1-2; Trial Court Opinion, 11/6/24, 1-13.

Appellant presents the following questions for our review:

1. Whether the evidence was insufficient to establish Appellant's guilt for the offense of [r]obbery, 18 Pa.C.S. § 3701(a)(1)(ii), where the Commonwealth failed to prove beyond a reasonable doubt that Appellant threatened serious bodily injury or intentionally put the complainant in fear of immediate serious bodily injury and the jury clearly did not find that Appellant possessed a weapon?

2. Whether the trial court erred when[,] over Appellant's objection[,] it responded affirmatively to the jury's question inquiring whether a victim could feel threatened or have fear of bodily harm or injury without a weapon, when the robbery charge required a finding of a threat of serious bodily injury and not simply bodily harm or injury?

3. Whether the trial court erred when it denied Appellant's motion *in limine* requesting a jury instruction that the Commonwealth failed to preserve [body camera] footage when the complainant first spoke to a police officer about the alleged robbery[,] which statement evidenced inconsistencies and this case rested entirely on the credibility of the complainant?

4.      Whether the verdict was against the weight of the evidence where the case rested entirely on the credibility of the complainant, who was shown to be inconsistent, and the jury did not find that Appellant possessed a weapon?

5.      Whether the trial court erred at sentencing when it considered Appellant's arrest for robbery in Philadelphia?

6.      Whether the trial court erred at sentencing when it ordered restitution in the amount of $800 when that amount was speculative and unsupported by the record?

Appellant's Brief, 4-5 (issues reordered; answers of the trial court omitted).

We have reordered the issues presented to address Appellant's challenge to the sufficiency of the evidence first because a grant of relief on that issue would warrant discharge on the pertinent crime and render the remaining issues moot. *See Commonwealth v. Toritto*, 67 A.3d 29, 33 (Pa. Super. 2013) (*en banc*) ("Because a successful sufficiency of the evidence claim warrants discharge on the pertinent crime, must address this issue first.").

In his sufficiency challenge, Appellant asserts that "[t]he Commonwealth failed to show[,] with proof beyond a reasonable doubt[,] that [he] threatened [the victim] with serious bodily injury or placed her in fear of imminent serious bodily injury."  Appellant's Brief, 38.  He agrees that "[a] fact[-]finder is entitled to infer that a victim was in mortal fear when a defendant visibly brandished a firearm," but asserts that the evidence failed to demonstrate his possession of a firearm. *Id.* at 39 (citing *Commonwealth v. Alford*, 880 A.2d 666, 676 (Pa. Super. 2017)).  He reasons, for purposes of the instant claim, that his not guilty verdicts on his weapons offenses and

the jury's question, "Can a victim feel threatened or have a fear of bodily harm or injury without a weapon?," constituted findings of facts by the jury that should render the evidence insufficient for robbery. *See* Appellant's Brief, 39-40 ("This evidence would be sufficient but for the fact that the jury did not believe that [he] had a firearm."). Appellant's claim must fail where it is contrary to our binding precedent concerning inconsistent verdicts in the context of sufficiency review.

"Evidentiary sufficiency is a question of law and, therefore, our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Muhammad*, 335 A.3d 1047, 1051 (Pa. 2025) (citation omitted). We employ the following well-settled standard of review when analyzing claims challenging the sufficiency of the evidence:

> the standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proof of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all the evidence actually received must be considered. Finally, the trier of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part[,] or none of the evidence.

- 14 -

*Commonwealth v. Marberger*, 344 A.3d 403, 410-11 (Pa. Super. 2025) (citation omitted).

For the robbery conviction at issue, the Commonwealth had the burden of proving, beyond a reasonable doubt, that, "in the course of committing a theft," Appellant "threatened [the victim] with or intentionally put[ the victim] in fear of immediate serious bodily injury." 18 Pa.C.S. § 3701(a)(1)(ii). "Serious bodily injury" is defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. § 2301. "Bodily injury" is defined as "[i]mpairment of physical condition or substantial pain." *Id.* As acknowledged by Appellant, the commission of a theft completed at gunpoint to the victim is sufficient to prove robbery under section 3701(a)(1)(ii). *See Commonwealth v. Bowen*, 612 A.2d 512, 514 (Pa. Super. 1992) ("the robbery here was found to be committed at gunpoint and as such would seem squarely to fall within the definition of section 3701(a)(1)(ii) as a first[-]degree felony").

Appellant's sufficiency claim, relying on an interpretation that his acquittal on weapons offenses was a finding that he was not in possession of a deadly weapon for purposes of a sufficiency claim, is contrary to law. A verdict of acquittal inconsistent with a verdict of guilty does not directly support Appellant's claim that there was a lack of evidence to sustain his robbery conviction because "an acquittal cannot be interpreted as a specific finding in relation to some of the evidence, and that even where two verdicts

are logically inconsistent, such inconsistency alone cannot be grounds for a new trial or reversal."[7] *Commonwealth v. Miller*, 35 A.3d 1206, 1213 (Pa. 2012). Rather, Appellant, alleging the lack of sufficient evidence, still bears the burden to engage in review, applying our sufficiency standard of review to the record at issue, to show that an element of his robbery conviction went unproven. *See Commonwealth v. Moore*, 103 A.3d 1240, 1242 n.3 (Pa. 2014) (noting "the United States Supreme Court has recognized that a court's review of the evidentiary sufficiency of a particular conviction is separate from its review of inconsistent verdicts, as sufficiency review entails an assessment of whether the evidence was sufficient for the jury to convict a defendant of a particular offense and is 'independent of the jury's determination that evidence on another count was insufficient'") (quoting *United States v. Powell*, 469 U.S. 57, 67 (1984)).

_____

[7] An exception to the inconsistent verdicts rule exists, such that a conviction cannot stand on sufficiency grounds when there has been an acquittal on a predicate offense. *See Commonwealth v. Magliocco*, 883 A.2d 479 (Pa. 2005). In *Magliocco*, our Supreme Court determined that a conviction for ethnic intimidation could not withstand review when a jury had acquitted the appellant for terroristic threats, where the commission of the offense of terroristic threats was specifically enumerated as an element of the crime of ethnic intimidation. *See id.* at 493; *but see Commonwealth v. Moore*, 103 A.3d 1240, 1247-48 (Pa. 2014) (noting that *Magliocco* was not so much an "exception" to the inconsistent verdict jurisprudence, but a "largely idiosyncratic" sufficiency challenge "that, critically [did] not entail jury inferences and so [was] not in conflict with the principle permitting inconsistent verdicts or its corollary that factual findings may not be inferred from a jury's acquittal"). Here, Appellant's weapon offenses were not predicate offenses for robbery.

Our Courts have long understood that "a fact[-]finder may render inconsistent verdicts," and "[a] jury's verdict in a criminal case will not be set aside merely because it appears to be inconsistent with another verdict of the jurors[, s]o long as the challenged verdict is supported by the evidence." *Commonwealth v. Taylor*, 471 A.2d 1228, 1231 (Pa. Super. 1984) (internal citations omitted); *see, e.g., Miller*, *supra*, 35 A.3d at 1209 ("the fact that the inconsistency [in the verdict] may be the result of lenity, coupled with the Government's inability to invoke review, suggests that inconsistent verdicts should not be reviewable.").

To the extent that Appellant challenges the sufficiency of the evidence, he fails to conduct meaningful sufficiency review to allege any absence of evidence necessary to support his robbery conviction. The victim, in this case, plainly testified that Appellant robbed her at gunpoint to steal an expensive pair of limited-edition sneakers that she was trying to sell him. *See* N.T. Trial, 4/17/24, 33 (the victim: "It was like a few minutes went past and then he pulled out a gun and said that he was going to take the shoes. … He aimed it [the gun] at me."). Viewing this evidence, in the light most favorable to the Commonwealth, as the verdict winner, it was sufficient to prove that Appellant threatened the victim with or intentionally put her in fear of immediate serious bodily injury while Appellant committed a theft of the shoes that she was trying to sell him. *See Bowen*, *supra*, 612 A.2d at 514. Appellant's sufficiency claim thus entitles him to no relief.

In his reordered second issue, Appellant asserts that the trial court erred when it denied his objection to the court's affirmative answer to the jury's question, "Can a victim feel threatened or have a fear of bodily harm or injury without a weapon?" **See** Appellant's Brief, 27-31. He argues that the court's answer was "an inaccurate statement of the law" because, for purposes of his robbery charge, the Commonwealth needed to prove that he threatened another with or intentionally put another in fear of immediate **serious** bodily injury, and believes the court's affirmative answer incorrectly gave the jury the impression that it could convict him of robbery even if it only found that he threatened the victim with or intentionally placed her in fear of bodily injury. **See id.** at 30.

When Appellant's counsel objected to the court's proposed affirmative answer, he stated no specific legal grounds for objecting to the court's answer:

> You have my objection for the record. I think it's improper to answer the question formally one way or the other. I would just ask them to reread the instructions to the elements of robbery as charged by the Commonwealth. So, I would be objecting … I just ask that they be instructed to reread the instruction.

**Id.** at 99-100. This undefined objection did not raise the proposed error that Appellant suggests, *i.e.*, that the court's affirmative answer improperly lowered the evidentiary threshold upon which the jury could find him guilty of robbery. Where Appellant failed to object to the court's answer on the specific basis that he now argues on appeal, we conclude that Appellant waived his instant challenge to the court's answer to the jury. **See Commonwealth v. Hitcho**, 123 A.3d 731, 756 (Pa. 2015) (holding Hitcho waived his challenge

to jury instruction where he made no specific objection or exception to the charge or the trial court's ruling respecting the points for charge); ***Commonwealth v. Baker***, 963 A.2d 495, 506 (Pa. Super. 2008) (holding Baker failed to preserve challenge to jury instruction when she did not assert a specific objection or exception to the instruction that was given); Pa.R.Crim.P. 647(C) ("No portions of the charge nor omissions from the charge may be assigned as error unless ***specific*** objections are made thereto before the jury retires to deliberate. All such objections shall be made beyond the hearing of the jury.") (emphasis added); ***see also*** Pa.R.A.P. 302(a) (providing, "Issues not raised in the trial court are waived and cannot be raised for the first time on appeal").[8]

_____

[8] Even if the instant appellate argument concerning the court's answer had been preserved in a specific objection lodged below, we would not be persuaded by Appellant's argument. The question posed by the jury did not specifically ask the court to clarify the minimum evidence necessary to reach a guilty verdict on the robbery charge, as Appellant suggests. The question related to the potential for a victim's subjective fear of bodily injury in the event of a robbery committed without the brandishing of a weapon. As our caselaw provides that there can be sufficient evidence for robbery in the absence of evidence that a defendant brandished a weapon, we cannot conclude that the trial court's answer to the jury's question was a misstatement of law. ***See Commonwealth v. Bragg***, 133 A.3d 328, 332 (Pa. Super. 2016) (finding evidence sufficient for robbery under 18 Pa.C.S. § 3701(a)(1)(ii) where Bragg entered a bank, disguised himself with sunglasses and a baseball cap, wore surgical gloves to conceal his fingerprints, banged his fists on the bank's counter, and demanded that the bank's teller place only large bills in his bag); ***id.*** ("While Appellant asserts he cannot be guilty of first-degree robbery as he did not brandish a weapon or make a specific verbal threat, this Court has never held that either action is required to sustain a conviction under Section 3701(a)(1)(ii).").

In his third reordered issue, Appellant asserts that the trial court erred by denying his request for a missing evidence jury instruction with respect to the absent body camera footage from Officer Pagan Rodriguez of his telephone conversation with the victim on the day of the robbery. *See* Appellant's Brief, 32-37. He reasons that he was entitled to the instruction "[b]ecause the evidence was solely within the control of the Commonwealth, [] the evidence was material to the issue of whether a firearm was used, [] it would not have been cumulative [of other evidence presented], and the Commonwealth had no satisfactory reason for why [the body camera footage] was not preserved." *Id.* at 32.

He alleges, *inter alia*, that the missing footage "would have uniquely shown that within hours of the alleged robbery, [the victim] told [Officer] Pagan Rodriguez that[,] as she stepped out of her car [on] the day she was to sell the shoes to [Appellant], he pulled out a black gun and pointed it at her forehead." Appellant's Brief, 35 (emphasis omitted). Appellant thus suggests that he would have used the missing evidence to impeach the victim's trial testimony that he pulled out the gun and pointed it at her ribcage after they had been talking and watching YouTube videos for twenty minutes. *See id.* at 35. In the absence of the body camera footage, he alleges the trial court erred by not granting his request for a "failure to produce [a] document or other tangible evidence at trial" charge, pursuant to Pennsylvania Suggested Standard Criminal Jury Instruction 3.21B. *See id.* at 32-33.

"[O]ur standard of review when considering the denial of jury instructions is one of deference – an appellate court will reverse a court's decision only when it abused its discretion or committed an error of law." *Commonwealth v. Galvin*, 985 A.2d 783, 798-99 (Pa. 2009).

> [A] jury charge will be deemed erroneous only if the charge as a whole is inadequate, not clear[,] or has a tendency to mislead or confuse, rather than clarify, a material issue. A charge is considered adequate unless the jury was palpably misled by what the trial judge said or there is an omission which is tantamount to fundamental error. Consequently, the trial court has wide discretion in fashioning jury instructions. The trial court is not required to give every charge that is requested by the parties and its refusal to give a requested charge does not require reversal unless the [defendant] was prejudiced by that refusal.

*Commonwealth v. Becker*, 192 A.3d 106, 118 (Pa. Super. 2018) (citation omitted).

The jury instruction Appellant requested, Pennsylvania Suggested Standard Criminal Jury Instruction 3.21B, states:

1. There is a question about weight, if any, you should give to the failure of [the Commonwealth] to produce an item of potential evidence at this trial[: body camera footage of Officer Pagan Rodriguez's telephone conversation with the victim].

2. If three factors are present, and there is no satisfactory explanation for a party's failure to produce an item, the jury is allowed to draw a common-sense inference that the item would have been evidence unfavorable to that party. The three necessary factors are:

   *First*, that the item is available to that party and not to the other;

   *Second*, that it appears the item contains or shows special information material to the issue; and

- 21 -

*Third*, that the item would not be merely cumulative evidence.

3.  Therefore, if you find these three factors present and there is no satisfactory explanation for the [Commonwealth's] failure to produce [the body camera footage], at this trial, you may infer, if you choose to do so, that it would have been evidence unfavorable to [the Commonwealth].

Pa. SSJI (Crim), § 3.21B (4th ed. 2024) (formatted consistent with Appellant's request for the instruction; emphasis in original).[9]

A missing evidence instruction is appropriate "[w]here evidence which would properly be part of a case is within the control of the party in whose interest it would naturally be to produce it, and, without satisfactory explanation he fails to do so." *Clark v. Philadelphia College of Osteopathic Medicine*, 693 A.2d 202, 204 (Pa. Super. 1997) (citation omitted).

The trial court rejected Appellant's request for the instruction because it viewed that there was a satisfactory explanation for the absence of the body camera footage: "My decision is that this is not appropriate here. There was a satisfactory explanation for the body cam, where the body cam went. It was satisfactorily explained[,] and I will not be reading that. You can argue as you argue, but I will not be reading that." N.T. Trial, 4/18/24, 5. Appellant

_____

[9] We note that "[t]he Suggested Standard Jury Instructions themselves are not binding and do not alter the discretion afforded trial judges in crafting jury instructions; rather, as their title suggests, the instructions are guides only." *Commonwealth v. Simpson*, 66 A.3d 254, 274 n. 24 (Pa. 2013) (citation and quotation marks omitted).

argues that the court was incorrect in making that determination: "Respectfully, nowhere in this record is there a satisfactory explanation for why the affiant, a detective, did not preserve a recording of an alleged robbery victim made within hours of it happening." Appellant's Brief, 37.

In its opinion, the trial court expands on its reasoning for denying the instruction request. It finds that the footage was not preserved due to inaction on the part of the police, rather than some bad faith act of evidence destruction, and that Appellant failed to demonstrate that a recording of the body camera footage would have been material in the context of the trial:

> [The failure to preserve the body camera footage] was fully explained during trial. Detective Procopio testified that Sharon Hill has an older system [for storing body camera footage]. If footage is not pulled within 30 days, it is written over and lost forever.
>
> In this case, Officer Rodriguez made a call to the complainant after he received a call from 911 dispatch about an alleged robbery. The interview was over the telephone and[,] although Officer Rodriguez's [body camera] was activated, there is no guarantee both sides of the telephone conversation were recorded. Detective Procopio explained that[,] at the time[,] he did not think of preserving the footage because[, on] the following day[,] the complainant was coming to the police station to give a formal recorded statement.
>
> Officer Rodriguez did file a written report memorializing the conversation. Defense counsel used perceived inconsistencies in that report during cross examination at trial.
>
> ***
>
> Here, [Appellant] has not shown how the body[ ]cam[era] footage contained "special information" that was not contained in Officer Rodriguez's written report memorializing the telephone conversation. Furthermore, the [body camera] footage is

- 23 -

cumulative of the written report. [Appellant] merely speculates that the [body camera footage] "evidenced inconsistencies" beyond those contained in the written report. [The m]issing [e]vidence instruction was simply not appropriate on these facts.

Trial Court Opinion, 11/6/24, 4-5 (record citation omitted).

Based on our review, we are persuaded that the trial court did not abuse its discretion in denying the missing evidence instruction. Even assuming *arguendo* that the footage would have captured both sides of the officer's telephone conversation with the victim (and the record gives no indication of that), Appellant failed to demonstrate that the content of the body camera footage would not have been cumulative of the content of the incident report form in which Officer Pagan Rodriguez contemporaneously summarized the victim's account of the robbery on the day of the robbery. **See** Incident Report Form, 10/9/22, 2-3, attached as Exhibit A to Motion to Compel Discovery, 11/8/23. Therefore, the record fully supports the trial court's conclusion that, at best, the missing body camera footage – its absence was explained at trial – would have been cumulative.

In his brief, Appellant alleges that the unpreserved body camera footage "would have uniquely shown that[,] within hours of the alleged robbery, [the victim] told [Officer] Pagan Rodriguez that[,] **as** she stepped out of her car [on] the day she was to sell the shoes to [him], he pulled out a black gun and pointed it at her forehead." Appellant's Brief, 35 (emphasis added). Our thorough review of the record, however, reflects that Appellant's cross-examination of Detective Procopio on the content of the incident report form summarizing the victim's phone conversation with Officer Pagan Rodriguez put

- 24 -

the same facts about the phone conversation before the jury that Appellant suggests would have been "uniquely shown" by the missing body camera footage. *Id.*; *see also* N.T. 4/17/24, 243-44 ("Q. That says [the victim] stated she stepped out of the car with the shoes, [Appellant] pulled a gun and put it to her forehead and told her to give him the shoes and proceeded to run away with it."). As the record reflects that the missing footage would have been cumulative of the same information contained in the incident report, and Appellant presented that information to the jury through cross-examination, we are unable to conclude that the trial court abused its discretion by denying a missing evidence instruction.

In his fourth issue, Appellant asserts that the trial court abused its discretion when it denied his post-sentence challenge to the weight of the evidence. *See* Appellant's Brief, 41-45. He concludes, as he argued in support of his sufficiency challenge, that the jury's acquittal on his weapons charges should have been accepted as a factual finding that he did not possess a gun for purposes of his robbery charge. *See id.* at 43. He then argues that the jury only reached its robbery verdict based on misinformation by the trial court arising from the court's answer to the jury on whether a victim could feel "threatened or have a fear of bodily harm or injury without a weapon." *See id.* at 44. Amid the inconsistent verdicts, Appellant asserts that the trial court "did not weigh the evidence" and "consider the inconsistencies of the complainant's testimony." *Id.* He then points out the inconsistency addressed in his claim concerning the lack of a missing evidence instruction: that Officer

Pagan Rodriguez's second-hand account of the victim's initial report had Appellant pulling out a gun immediately after the victim exited her car and pointing it at her forehead whereas the victim's trial testimony had him pulling out the gun after he watched YouTube videos for an extended period of time and pointing the gun at her rib cage. *See id.* He then concludes by asserting that there was a lack of evidence to corroborate his guilt. *See id.* at 44-45.

Our standard of review as to the denial of a weight claim by a trial court is to examine "the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence." *Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) (quoting *Commonwealth v. Widmer*, 744 A.2d 745, 753 (Pa. 2000)) (emphasis omitted). In a post-sentence motion, a weight claim "is addressed to the discretion of the trial court." *Widmer*, 744 A.2d at 751. "In order for a defendant to prevail on a challenge to the weight of the evidence, 'the evidence must be so tenuous, vague[,] and uncertain that the verdict shocks the conscience of the court.'" *Commonwealth v. Talbert*, 129 A.3d 536, 546 (Pa. Super. 2015) (quoting *Commonwealth v. Sullivan*, 820 A.2d 795, 806 (Pa. Super. 2003)). A trial court's denial of a motion "based on a weight of the evidence claim is the least assailable of its rulings." *Commonwealth v. Diggs*, 949 A.2d 873, 880 (Pa. 2008).

"An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court." *Clay*, 64 A.3d at 1055. This Court must limit review to "whether

the trial court abused its discretion by reaching a manifestly unreasonable judgment, misapplying the law, or basing its decision on partiality, prejudice, bias, or ill-will." *Id.* at 1056.

The instant weight claim is principally based on Appellant's conclusion that the jury's inconsistent verdicts can be interpreted as a finding that he never possessed a firearm. As we explained above in response to Appellant's sufficiency challenge, "an acquittal cannot be interpreted as a specific finding" as Appellant asserts herein. *Miller, supra*, 35 A.3d at 1213. "[I]nconsistent verdicts are permissible so long as the evidence is *sufficient* to support the conviction, while '[a] weight of the evidence claim concedes that the evidence is sufficient to sustain the verdict.'" ***Commonwealth v. Carrasquillo***, --- A.3d ----, 2025 WL 2959625, *4 (Pa. Super. 2025) (quoting ***Commonwealth v. Lyons***, 79 A.3d 1053, 1067 (Pa. 2013)). As Appellant's assertions about the inconsistency of the verdicts implicate the sufficiency of the evidence, rather than its weight, it does not advance the instant claim. ***See Carrasquillo***, --- A.3d ----, 2025 WL 2959625, at *4 (referring to argument in support of a challenge based on inconsistent verdicts framed as a challenge to the weight of the evidence as "incoherent" and holding that it must be reviewed as a challenge to the sufficiency of the evidence).

The remaining portions of Appellant's argument implicate the weight of the evidence because they address the credibility of the victim, but we find them to be waived. Appellant's direct challenge to the victim's credibility identifies the stated conflicts between the victim's trial testimony and her

earlier account to the police: that she earlier reported that Appellant immediately pulled out a gun when they first met and said that he pointed the gun at her face whereas her trial testimony was that Appellant pulled the gun out after watching YouTube videos in her presence for at least twenty minutes and then pointed the gun at her rib cage. **See** Appellant's Brief, 44. To the extent that Appellant asserts that the victim was incredible due to a lack of corroborating evidence, he points out that there were no "independent witnesses," no surveillance footage from the surrounding properties, and no recovered gun. **Id.** These portions of the claim are waived as Appellant failed to raise them with specificity in his post-sentence weight claim and his Rule 1925(b) statement.

A challenge to the weight of the evidence "must be preserved either in a post-sentence motion, by a written motion before sentencing, or orally prior to sentencing." **Commonwealth v. Lofton**, 57 A.3d 1270, 1273 (Pa. Super. 2012); **see also** Pa.R.Crim.P. 607(A)(1)-(3). Otherwise, a weight claim will be waived. **See Commonwealth v. Thompson**, 93 A.3d 478, 490 (Pa. Super. 2014) (failure to properly preserve a weight of the evidence claim will result in waiver, even if the trial court addresses the issue in its Rule 1925(a) opinion). A weight claim must be raised with specificity both in a post-sentence motion and a Rule 1925(b) statement in order to for it to be preserved for our review. **See Commonwealth v. Hitner**, 910 A.2d 721, 733 n.17 (Pa. Super. 2006) (finding a weight claim preserved where the appellant "raised his *specific* weight of the evidence claims in his post-

sentence motion and court-ordered [Rule] 1925(b) statement") (citations omitted; emphasis added).

In his post-sentence weight claim, Appellant asserted:

[T]he verdict was against the weight of the evidence, such that the evidence presented was so inherently unreliable and contradictory that a new trial is warranted in the interest of justice. The sole witness who testified that a robbery occurred was the [c]omplainant, who gave multiple inconsistent statements to police. [Appellant] was found not guilty of the weapons offenses in this case, including [p]ossessing an [i]nstrument of [c]rime, and there was no testimony that [he] otherwise threatened the [c]omplainant in any way.

Post-sentence Motion, 6/20/24, ¶ 5. In his Rule 1925(b) statement, Appellant identified his weight claim as follows: "The verdict as to robbery was against the weight of the evidence where the case rested entirely on the credibility of the complainant, who was shown to be inconsistent, and the jury did not find that Defendant/Appellant possessed a weapon." Rule 1925(b) Statement, 10/7/24, ¶ 3.

Appellant's post-sentence weight claim only generally referred to the victim as having "multiple inconsistent statements to police," and his Rule 1925(b) statement broadly stated that the victim "was shown to be inconsistent," without either presentation of a weight claim referring to the specific inconsistencies addressed by his appellate weight claim. Post-sentence Motion, 6/20/24, ¶ 5; Rule 1925(b) Statement, 10/7/24, ¶ 3. Neither the post-sentence weight claim nor the identified weight claim in the Rule 1925(b) specified that the victim's credibility was undermined by a lack

of corroborating evidence. The weight claim in the post-sentence motion only referred to the victim as "[t]he sole witness" and the Rule 1925(b) weight claim acknowledged that the robbery verdict "rested entirely on the credibility of the complainant." Post-sentence Motion, 6/20/24, ¶ 5; Rule 1925(b) Statement, 10/7/24, ¶ 3.

In his appellate weight claim, Appellant notes that the trial court only "addressed this issue very briefly in its opinion." Appellant's Brief, 43. The trial court's brief response to the weight claim in its Rule 1925(a) opinion appears to have been a function of Appellant's failure to state his weight claim with specificity in his post-sentence motion and his Rule 1925(b) statement. *See* Trial Court Opinion, 11/6/24, 10 ("In reviewing the record in this case, the court determines that the verdict was fully supported by the evidence. Additionally, as noted above, inconsistent verdicts provide no grounds for relief."). Rather than providing clarity for the trial court to address the substance of his articulated appellate challenges to the victim's credibility, Appellant's post-sentence motion and Rule 1925(b) concise statement left the trial court to guess as to which evidentiary inconsistencies Appellant wished to raise. Consequently, we conclude that Appellant waived his appellate weight claim. *See Commonwealth v. Schofield*, 312 A.3d 921, 927 (Pa. Super. 2024) ("[A] concise statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no Concise Statement at all.") (citation omitted), *appeal denied*, 327 A.3d 184 (Pa. 2024).

In his fifth claim, Appellant challenges the discretionary aspects of his sentence. In particular, he alleges that the trial court erred by improperly considering, in violation of our Supreme Court's decision in ***Commonwealth v. Berry***, 323 A.3d 641, 654 (Pa. 2024), an arrest he had for an unrelated robbery charge out of Philadelphia which did not result in a conviction. ***See*** Appellant's Brief, 46-49.

"[A] claim [that] a sentencing court relied on impermissible factors in imposing a sentence presents a challenge to the discretionary aspects of a sentence." ***Commonwealth v. Davis***, 341 A.3d 808, 812 (Pa. Super. 2025). "The right to appellate review of the discretionary aspects of a sentence is not absolute[] and must be considered a petition for permission to appeal." ***Commonwealth v. Buterbaugh***, 91 A.3d 1247, 1265 (Pa. Super. 2014) (*en banc*). To invoke this Court's jurisdiction when challenging the discretionary aspects of a sentence, an appellant must satisfy a four-part test: (1) the appellant preserved the issue by raising it at the time of sentencing or in a post-sentence motion; (2) the appellant filed a timely notice of appeal; (3) the appellant set forth in his brief a concise statement of reasons relied upon for allowance of appeal pursuant to Pennsylvania Rule of Appellate Procedure 2119(f); and (4) the appellant raises a substantial question for review. ***See Commonwealth v. Banks***, 198 A.3d 391, 401 (Pa. Super. 2018).

"The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." ***Commonwealth v. Anderson***, 830 A.2d 1013, 1018 (Pa. Super. 2003). "A substantial question exists only when

the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." ***Commonwealth v. Caldwell***, 117 A.3d 763, 768 (Pa. Super. 2015) (*en banc*) (quoting **Commonwealth v. Prisk**, 13 A.3d 526, 533 (Pa. Super. 2011)). In deciding if a substantial question exists, "we may not look beyond the statement of questions presented and the concise prefatory [Rule] 2119(f) statement." ***Commonwealth v. Scullin***, 607 A.2d 750, 752 (Pa. Super. 1992).

Here, Appellant timely filed his notice of appeal, preserved his instant sentencing claim by including it in his post-sentence motion, and included a Rule 2119(f) statement in his appellate brief. ***See*** Notice of Appeal, 8/27/24, 1; Post-sentence Motion, 6/20/24, ¶ 4 ("The Court made no mention of the aggravating factors that it took into consideration during sentencing, and the factors that the Commonwealth highlighted were either improper (such as a Philadelphia robbery charge which was ultimately withdrawn) or already factored into the sentencing guidelines"); Appellant's Brief, 25-26. The instant claim also raises a substantial question as it asserts that the sentencing court relied on an impermissible sentencing factor. ***See Banks***, ***supra***, 198 A.3d at 401 ("It is well settled that a claim that the sentencing court relied on impermissible factors in sentencing raises a substantial question.") (citation and internal quotation marks omitted). Accordingly, we will address the substantive merits of Appellant's claim.

Our standard of review for addressing a discretionary sentencing claim is as follows:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias[,] or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Johnson*, 125 A.3d 822, 826 (Pa. Super. 2015) (citation omitted).

Additionally, our review is confined by statutory mandates. *See Johnson*, 125 A.3d at 826-27. Section 9781(c) of Pennsylvania Sentencing Code provides:

> The appellate court shall vacate the sentence and remand the case to the sentencing court with instructions if it finds:
>
> (1)    the sentencing court purported to sentence within the sentencing guidelines but applied the guidelines erroneously;
>
> (2)    the sentencing court sentenced within the sentencing guidelines but the case involves circumstances where the application of the guidelines would be clearly unreasonable; or
>
> (3)    the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable.

42 Pa.C.S. § 9781(c). Here, Appellant was sentenced at the top of the standard range recommended by the guidelines and there is no dispute that the guidelines were properly applied. Section 9871(c)(2) is pertinent to our

- 33 -

review. Specifically, we may only vacate and remand for resentencing, here, if the sentencing court's application of a guidelines term was "clearly unreasonable." 42 Pa.C.S. § 9781(c)(2).

Further, in reviewing the record, we consider:

(1)   The nature and circumstances of the offense and the history and characteristics of the defendant.

(2)   The opportunity of the sentencing court to observe the defendant, including any presentence investigation.

(3)   The findings upon which the sentence was based.

(4)   The guidelines promulgated by the commission.

42 Pa.C.S. 9781(d).

Appellant asserts that the trial court erred at sentencing "when it considered" his separate arrest for robbery in an unrelated criminal matter where the unrelated charge did not result in a conviction. Appellant's Brief, 46. In *Commonwealth v. Berry*, 323 A.3d 641, 643, 654-56 (Pa. 2024), our Supreme Court held that past arrests that did not lead to convictions cannot be used as a sentencing factor and, on that ground, vacated Berry's sentence.[10] In *Berry*, the defendant had a "prior record score" of zero, the sentencing court "stated that Berry's arrest record (which the court

_____

[10] While not relevant in the instant case, we note that, in *Berry*, the Supreme Court did not explicitly reach the issue of whether a sentencing court may consider "a prior arrest where the facts underlying the arrest are established by a preponderance of the evidence." 323 A.3d at 656.

characterized as 'previous other contacts' with the criminal legal system) essentially negated Berry's absence of a prior criminal record," and the court imposed an imprisonment term "that deviated significantly upward from the standard sentencing range recommended by the sentencing guidelines." *Id.* at 643. The abuse of discretion by the sentencing court in *Berry* was the court's "misappli[cation of] the law by predicating the sentencing in part upon Berry's arrest record." *Id.*; *see also id.* at 651 ("The court then nullified the prior record score by considering, and significantly relying upon, Berry's prior arrests.").

The defendant in *Berry* argued before this Court that the sentencing court in his case abused its discretion by crafting a sentence that was based at least in part upon his arrest record. 323 A.3d at 646. Appellant similarly argues that the sentencing court in his case violated *Berry* by improperly considering his unrelated arrest that did not result in a conviction, but he fails to demonstrate that the court actually based its sentence in part upon his unrelated arrest. He points out that the Commonwealth emphasized his Philadelphia arrest during its arguments for an aggravated-range sentence in a pre-sentence memorandum and at both his sentencing hearing and a hearing for reconsideration of sentence. *See* Appellant's Brief, 46-47 (quoting Commonwealth Sentencing Memorandum, 6/7/24, 2; N.T. Sentencing Hearing, 6/10/24, 6-7; N.T. Reconsideration of Sentence Hearing, 7/22/24, 8). He failed though to demonstrate any support in the record showing that

the sentencing court considered his prior unrelated arrest and based his sentence at least in part on the prior unrelated arrest.

At sentencing, the trial court immediately imposed its sentence without offering a statement of reasons for the imposed standard-range guideline imprisonment term. *See* N.T. Sentencing Hearing, 6/10/24, 13 ("THE COURT: All right. Mr. Kannah, on Count Number One, robbery a felony of the first degree[,] I sent[ence] you to a minimum of seven years [and] to a maximum of 18 years at a [s]tate [c]orrectional [i]nstitute."). In its order denying reconsideration of Appellant's sentence, the court noted that reasons were: "1) at age 20, defendant is already a [RFEL]; 2) poor candidate for [r]ehabilitation; and 3) danger to society." Order (denial of sentence reconsideration), 7/31/24, 1. In its opinion for this appeal, the sentencing court notes that "[a] sentence that falls within the standard guideline range is presumed to be reasonable" and, "[b]ecause the sentence did not exceed the guidelines and the court considered all relevant information, [Appellant's] sentence was not an abuse of discretion." Trial Court Opinion, 11/6/24, 12-13.

Upon reviewing this record, we are unable to find any support for the notion that the sentencing court improperly considered Appellant's unrelated arrest and based the imposed sentence, even in part, on that factor. On this basis, we conclude that Appellant has failed to demonstrate an abuse of discretion. *See Commonwealth v. Campbell*, --- A.3d ---, 2025 WL 2950169, *8 (Pa. Super., filed Oct. 20, 2025) (where the sentencing court

may have relied on an improper factor there is no abuse of discretion where the sentence is reasonable based upon consideration of other proper factors).

Alternatively, Appellant argues that a remand for resentencing is appropriate to remedy a lack of statement of reasons for the sentence stated by the sentencing court that would elucidate whether the court considered his unrelated arrest:

> Based thereon, it is impossible to know whether the court took the arrest into consideration when imposing the sentence. Certainly, it could have considered it when concluding that [Appellant] is a poor candidate for rehabilitation and a danger to society. The court's [Rule 1925(a) o]pinion provided no clarity on the issue. The appropriate remedy is to remand for resentencing.

Appellant's Brief, 49 (record and caselaw citation omitted). Even assuming *arguendo* that an argument that the sentencing court failed to properly state reasons for its sentence were properly before us, we would not grant the relief requested because this Court has rejected similar arguments alleging that sentencing courts have failed to offer statements of reasons for imprisonment terms within the standard range recommended by the Sentencing Guidelines. *See Commonwealth v. Leatherby*, 116 A.3d 73, 83 (Pa. Super. 2015) ("Here, each of Leatherby's sentences was within or below the standard range of the sentencing guidelines … Thus, the trial court was not required to provide a statement of reasoning and this claim does not raise a substantial question."); *Commonwealth v. Szarko*, 616 A.2d 26, 27 (Pa. Super. 1992) (court was not required to provide a contemporaneous written statement for a deviation from the guidelines where it imposed a sentence within the

standard range of the guidelines); *see also Commonwealth v. Ventura*, 975 A.2d 1128, 1135 (Pa. Super. 2009) (noting that a standard guideline range sentence "is presumptively where a defendant should be sentenced").

In his last issue, Appellants presents a second challenge to the discretionary aspects of his sentence, alleging that the trial court erred by imposing restitution in the amount of $800.00 because "that amount was speculative and unsupported by the record." Appellant's Brief 50-52. *See Commonwealth v. Solomon*, 247 A.3d 1163, 1167 (Pa. Super. 2021) (*en banc*) ("issues concerning [an] amount of restitution implicate the discretionary aspects of a defendant's sentence"). As a preliminary matter, we note that this claim is reviewable because Appellant timely filed his notice of appeal, he preserved the instant claim in his post-sentence motion, *see* Post-sentence Motion, 6/20/24, ¶ 6, he included this claim in his Rule 2119(f) statement, *see* Appellant's Brief, 26, and the claim raises a substantial question for our review. *See Solomon*, 247 A.3d at 1167-68 (stating substantial question raised by claim asserting that a restitution award was "speculative and excessive" where it was based on the initial cost of stolen coins despite hearing evidence that the coins' market value had fallen by almost $30,000.00 lower than their initial cost); *Commonwealth v. Pappas*, 845 A.2d 829, 842 (Pa. Super. 2004) (stating substantial question was presented by the contention that there was insufficient evidence of the value of the stolen property to support the restitution award). We thus may proceed with substantive review of this claim. As with any other discretionary

sentencing claim, our standard of review is focused on whether the sentencing court's denial of the instant claim was an abuse of discretion. **See Solomon**, 247 A.3d at 1168.

Appellant asserts that the sentencing court erred by imposing $800.00 in restitution based on the agreed-upon sales price for the stolen sneakers in the absence of the presentation of receipts, other documentation, or testimony establishing the value of the shoes at the sentencing hearing. **See** Appellant's Brief, 50, 52. He also argues that the restitution value of the stolen sneakers was speculative because the authenticity of the sneakers was challenged at trial. **See id.** at 52. He argues that this matter must be remanded for a hearing to determine the stolen sneakers' value. **See id.** at 50, 52.

The trial court recommends that we reject this claim because the amount of restitution was based on the trial evidence as to the value of the sneakers:

> [Appellant] argues the amount of restitution ordered by the court was speculative and excessive. This argument is without merit. The court's order of restitution is supported by the record as the court accepted the evidence provided by the [v]ictim concerning the value of the sneakers. The [v]ictim advertised the sneakers on the "Offer Up App[]" for $800. [Appellant] contacted the [v]ictim and represented to her [that] he was willing to purchase the sneakers for the asking price. The court, as fact-finder, was free to choose to accept the evidence the [v]ictim provided in support of her estimates as to the value of the stolen sneakers. The [v]ictim's loss was a direct result of the crime in this case, and the restitution amount is clearly supported by the record. Accordingly, the court did not abuse its discretion in determining $800 to be the proper amount of restitution.

Trial Court Opinion, 11/6/24, 13.

In addition to all other sentencing options available to the trial court, it "shall order the defendant to compensate the victim of his criminal conduct for the damage or injury that [s]he sustained." 42 Pa.C.S. § 9721(c). Restitution is authorized whenever the "property of a victim has been stolen, converted[,] or otherwise unlawfully obtained, or its value substantially decreased as a direct result of the crime." 18 Pa.C.S. § 1106(a)(1). In determining the amount of restitution, the court must consider, "the extent of the injury suffered by the victim, the victim's request for restitution as presented to the district attorney in accordance with paragraph (4) and such other matters as it deems appropriate." 18 Pa.C.S. § 1106(c)(2)(i). To determine the correct amount of restitution, a "but-for" test is used—damages which occur as a direct result of the crime are those which should ~~have~~ not have occurred but for the defendant's criminal conduct. *See Commonwealth v. Gerulis*, 616 A.2d 686, 697 (Pa. Super. 1992). "An order of restitution is a sentence, thus, the amount awarded is within the sound discretion of the trial court and must be supported by the record." *Commonwealth v. Biauce*, 162 A.3d 1133, 1138 (Pa. Super. 2017) (cleaned up; citation omitted).

A restitution order that is speculative or excessive or is "not supported by the record" is an abuse of a sentencing court's discretion. *Solomon*, 247 A.3d at 1168. Conversely, if there is a "direct nexus" between the crime and the award of restitution, and some evidentiary support for the amount, then

there is no abuse of discretion, because restitution compensates for a loss caused by a defendant's criminal conduct. *Id.* at 1172.

Here, Appellant's claim fails to appreciate that a court may base restitution on the testimony of the victim as to the value of the stolen property. For instance, in *Commonwealth v. Rush*, 909 A.2d 805 (Pa. Super. 2006), the defendant pleaded guilty to theft and related charges for stealing twenty-two aluminum plates from a scrap yard and selling them to a third party. *Id.* at 806. In that case, the court determined that the victim had $28,450.00 in losses outstanding from the theft where a co-defendant already had a restitution hearing and the amount of loss was based on the victim's testimony. *Id.* at 807. In that case, we held that the amount of restitution was neither speculative nor excessive where it was based on the victim's testimony. *Id.* at 810 ("Prior to entry of the guilty plea, the trial court judge clearly explained that the victim's testimony, as to the value of the stolen property, supported restitution in the amount at issue. In accepting the victim's testimony as credible, the court, determined, and Appellant confirmed, that the loss by the victim was attributable to conduct on the part of Appellant and co-defendant[.]").

In this case, the sentencing court, which also presided at the jury trial, was presented with evidence including the victim's testimony that her offer price for the stolen sneakers was $800.00 and that was the amount Appellant agreed to pay her for the sneakers before he proceeded to rob her of the shoes. *See* N.T. Trial, 4/17/24, 24-25, 32-33. Moreover, the court heard

testimony from Detective Procopio that the victim told police that she "had her own … shoe sales company." *Id.* at 280. Based on the foregoing record, we discern no merit to Appellant's assertion that the restitution amount was speculative. The trial court did not abuse its discretion when it based the restitution amount on the trial testimony of the victim as to the bargained-for price of the stolen shoes, set by the victim and evidently accepted by Appellant, and where other trial evidence reflected that the victim was a commercial seller of similar goods and would thus have a basis to know the appropriate value of the sneakers in question. *See, e.g.*, *Commonwealth v. Dohner*, 725 A.2d 822, 824 (Pa. Super. 1999) (record supported amount of restitution where Dohner was found guilty by jury of theft of money from a chain restaurant that she worked at as an assistant manager, and the Commonwealth offered testimony from a loss prevention director of the restaurant chain, who calculated the amount that Dohner stole).

Our thorough review of the record reveals that there was sufficient evidence to sustain Appellant's robbery conviction, Appellant waived a meritless challenge to the trial court's answer to a jury question, the trial court did not err in denying Appellant a missing evidence jury instruction, the portions of Appellant's challenge to the weight of the evidence, which did not otherwise address the sufficiency of evidence, were waived, and that Appellant failed to demonstrate an abuse of discretion with respect to the imposition of his imprisonment term and the restitution amount. Accordingly, we affirm Appellant's June 10, 2024 judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 1/28/2026